Sweeney v Stark (2023 NY Slip Op 02904)

Sweeney v Stark

2023 NY Slip Op 02904

Decided on May 31, 2023

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on May 31, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

COLLEEN D. DUFFY, J.P.
REINALDO E. RIVERA
LINDA CHRISTOPHER
HELEN VOUTSINAS, JJ.

2020-06562
2020-08184
 (Index No. 608692/18)

[*1]Joseph M. Sweeney, et al., respondents,
v
Julie Ann Stark, etc., et al., appellants.

McLaughlin & Stern, LLP, Garden City, NY (Christian Browne of counsel), for appellants.
Westerman Ball Ederer Miller Zucker & Sharfstein, LLP, Uniondale, NY (Philip J. Campisi, Jr., and Naeemah Clark of counsel), for respondents.

DECISION & ORDER
In an action for declaratory relief, for specific performance directing the return of a down payment held in escrow, and to recover damages for breach of a contract for the sale of real property, the defendants appeal from (1) an order of the Supreme Court, Nassau County (R. Bruce Cozzens, Jr., J.), entered August 20, 2020, and (2) an interlocutory judgment of the same court entered September 18, 2020. The order denied the defendants' motion for summary judgment dismissing the causes of action for specific performance and to recover damages for breach of contract, with respect to the cause of action for declaratory relief, and on the counterclaim of the defendants Julie Ann Stark and Anthony Orso to retain the down payment as liquidated damages and to recover attorney's fees, and for a hearing on the amount of attorney's fees to be awarded, and granted the plaintiffs' cross-motion for summary judgment on the complaint and for a hearing on the issue of damages on the cause of action to recover damages for breach of contract. The interlocutory judgment, upon the order, is in favor of the plaintiffs and against the defendants, in effect, declaring that the plaintiffs properly terminated the contract and directing the defendant Marc A. Paz, P.C., to release the down payment, held in escrow, to the plaintiffs.
ORDERED that the appeal from so much of the order as denied those branches of the defendants' motion which were for summary judgment dismissing the cause of action for specific performance and with respect to the cause of action for declaratory relief, and granted those branches of the plaintiffs' cross-motion which were for summary judgment on those causes of action, is dismissed, as those portions of the order were superseded by the interlocutory judgment; and it is further,
ORDERED that the order is modified, on the law, by deleting the provision thereof granting that branch of the plaintiffs' cross-motion which was for summary judgment on the cause of action to recover damages for breach of contract and for a hearing on the issue of damages on that cause of action, and substituting therefore a provision denying that branch of the cross-motion; as so modified, the order is affirmed insofar as reviewed; and it is further,
ORDERED that the interlocutory judgment is reversed, on the law, those branches [*2]of the plaintiffs' cross-motion which were for summary judgment on the causes of action for specific performance and for declaratory relief are denied, and the order is further modified accordingly; and it is further,
ORDERED that one bill of costs is awarded to the defendants.
On May 16, 2017, the plaintiffs (hereinafter the buyers) and the defendants Julie Ann Stark and Anthony Orso (hereinafter together the sellers) entered into a contract for the sale of real property located in Sands Point. The contract called for a sale price of $6,250,000. Pursuant to the contract, the buyers made a down payment of $625,000, which was deposited into an escrow account of the sellers' attorney, the defendant Marc A. Paz, P.C. (hereinafter Paz). Paragraph 21 of the contract conferred on both the buyers and the sellers the right to cancel the contract if the sellers were unable to remove or remedy title objections or other defects within an adjournment of the closing date which was not to exceed 60 days, by providing notice of cancellation to the other party within 10 days after such adjournment. In addition, pursuant to paragraph 45 of the second rider to the contract (hereinafter the second rider), upon notice to the sellers within 5 days prior to the date set forth for the closing of title, if there should appear any valid objections to title, the sellers were entitled to a reasonable time, not to exceed 30 days, within which to remove such defects, and if the objections could not be removed, the sellers were to return to the buyers the monies paid on account of the contract. The second rider provided that, to the extent there were any inconsistencies between the terms of the second rider and the terms of the contract, the terms of the second rider would prevail. Further, paragraph 49 of the second rider provided that, at or prior to closing, a certain right-of-way "shall be fully and entirely unobstructed, allowing for unimpeded access by [the buyers]" from the premises to Hempstead Harbor. The contract called for an on or about closing date of July 17, 2017.
Prior to the closing date, the parties discovered that deeds related to a "land swap" between the sellers and their neighbor, Eric Berliner, were never properly recorded. As a result, defects in title prevented the parties from closing. Paragraph 32 of the first rider to the contract provides that the sellers and buyers have the right to one adjournment of the closing date, not to exceed 30 days after the original closing date set forth therein, and that the new closing date shall be "Time of the Essence" against the buyers and the sellers.
The sellers endeavored to resolve the title defects, and set a closing date of December 21, 2017, and declared it "time of the essence." The buyers objected based upon title defects that remained unresolved as a result of the "land swap" and the fact that obstructions remained on the right-of-way. The sellers agreed that they would work on resolving the defects and the parties did not close on December 21, 2017. On May 22, 2018, the buyers' title company set forth defects in title that would preclude the recording of the deed and issues with the lack of a tax map update that prevented a proper description of the property being sold. Subsequently, more than one year after the buyers and the sellers signed the contract of sale, by letter dated May 23, 2018, the buyers' attorney, relying, inter alia, on paragraph 21 of the contract and paragraph 45 of the second rider, informed the sellers' attorney that the buyers were electing to terminate the contract due to title defects as enunciated by their title company and demanded return of their down payment. In response, the sellers rejected the buyers' termination and subsequently set a "time of the essence" closing for July 2, 2018. By letter from their attorney dated June 28, 2018, the buyers indicated that the time-of-the-essence closing was invalid and a nullity, as they had terminated the contract. The buyers did not appear at the time of the essence closing.
On June 28, 2018, the buyers commenced this action against the sellers and Paz for specific performance directing the return of the down payment, for declaratory relief, and to recover damages for breach of contract. The defendants interposed an answer which included a counterclaim to allow the sellers to retain the down payment as liquidated damages and to recover attorney's fees. Thereafter, the defendants moved for summary judgment dismissing the causes of action for specific performance and to recover damages for breach of contract, with respect to the cause of action for declaratory relief, and on the counterclaim, and for a hearing on the amount of attorney's fees to be awarded. The buyers cross-moved for summary judgment on the complaint and for a hearing on the [*3]issue of damages on the cause of action to recover damages for breach of contract. In an order entered August 20, 2020, the Supreme Court granted the buyers' cross-motion and denied the defendants' motion, finding that the buyers properly exercised their right to terminate the contract. In an interlocutory judgment entered September 18, 2020, the court, in effect, declared that the buyers properly terminated the contract and directed Paz to return the down payment to the buyers. The defendants appeal.
Contrary to the buyers' contention, they failed to establish, prima facie, that they were entitled to cancel the contract pursuant to paragraph 21 of the contract and paragraph 45 of the second rider, and to a return of the down payment. Pursuant to those provisions, the time limits for the sellers to correct defects in title were to be correlated with a scheduled closing date. However, on May 23, 2018, the date the buyers sent the letter terminating the contract, no date had been set for a closing, and no scheduled closing had been adjourned; thus, the time limits for correcting the defects never began to run against the sellers. While in their letter terminating the contract the buyers reference the on or about July 17, 2017 closing date set forth in the contract, neither party sought to close at that time. Moreover, when the December 21, 2017 time of the essence closing scheduled by the sellers did not take place, no adjourned date was set. Therefore, as there was an indefinite adjournment of the closing date, "some affirmative act has to be taken by one party before [they] can claim the other party is in default; that is, one party has to fix a time by which the other must perform, and [they] must inform the other that if [they do] not perform by that date, [they] will be considered in default" (Rodrigues NBA, LLC v Allied XV, LLC, 164 AD3d 1388, 1389 [internal quotation marks omitted]). Here, the buyers failed to fix a time by which the sellers had to cure the title defects and provide an unobstructed right-of-way before they terminated the contract on May 23, 2018. As "it was incumbent upon the [buyers] to put the seller[s] in default by tendering performance, demanding that the seller[s] perform [their] obligations, and giving [them] a reasonable opportunity to cure the defects" (Xelo v Hamilton, 198 AD3d 710, 712), and the buyers never did so, the Supreme Court erred in granting the buyers' cross-motion for summary judgment on the complaint and for a hearing on the issue of damages on the cause of action to recover damages for breach of contract.
Regarding the defendants' motion, inter alia, for summary judgment, as an initial matter, the buyers did anticipatorily breach the contract, since the May 23, 2018 letter terminating the contract and demanding a return of the down payment was a "'positive and unequivocal'" expression of an intent not to perform (Central Park Capital Group, LLC v Machin, 189 AD3d 984, 986, quoting Princes Point LLC v Muss Dev. L.L.C., 30 NY3d 127, 133; see Hegner v Reed, 2 AD3d 683, 684). However, inasmuch as the sellers thereafter set a time of the essence closing date, they elected to ignore the buyers' breach of the contract and treat the contract as still valid (see Hegner v Reed, 2 AD3d at 684-685; see generally Strasbourger v Leerburger, 233 NY 55, 59).
"[W]hen a party to a real estate contract declares time to be of the essence in setting a closing date, each party must tender performance on that date, and a failure to perform constitutes a default" (Donerail Corp. N.V. v 405 Park LLC, 100 AD3d 131, 137; see Grace v Nappa, 46 NY2d 560, 565). "[W]here a seller seeks to hold a purchaser in breach of contract, the seller must establish that [he or she] was ready, willing, and able to perform on the time-of-the-essence closing date, and that the purchaser failed to demonstrate a lawful excuse for [his or her] failure to close" (Martocci v Schneider, 119 AD3d 746, 748, quoting Donerail Corp. N.V. v 405 Park LLC, 100 AD3d at 138). Here, the sellers failed to establish, prima facie, that they were ready, willing, and able to perform on the law day. Although the sellers invoked their right to procure a reputable title company, willing to provide insurable title, the sellers' submissions failed to eliminate triable issues of fact as to whether the sellers were able to convey clear title in accordance with the terms of the contract. While the sellers submitted a transcript of the July 2, 2018 "closing" at which a representative of Old Republic, the title company procured by the sellers, asserted that, as per Al Stork, the senior vice president and counsel of Old Republic, it would issue a policy free from exception, the deposition testimony of Stork raises triable issues of fact. Significantly, with regard to certain "land swap" deeds between the sellers and Berliner, the owner of the adjacent property, Stork averred that Old Republic's commitment to insure was subject to verification upon issuance of an updated tax map by Nassau County that corresponded with the exchange of the parcels. However, Stork testified that [*4]the updated tax map was not received by Old Republic until August 21 or 22, 2018, at least 45 days after the scheduled time-of-the-essence closing. Moreover, Stork explained that Old Republic's willingness to insure was based in part on having the cooperation of the parties to the "land swap" transaction to correct any issues that would arise post-closing. However, the buyers raised triable issues of fact as to whether Berliner would be cooperative post-closing. Additionally, there was an issue with regard to Berliner producing a corrected satisfaction of mortgage related to property in the "land swap" transaction. Further, the sellers did not provide any evidence that the right-of-way was "fully and entirely unobstructed, allowing for unimpeded access" from the premises to Hempstead Harbor. Therefore, there are triable issues of fact as to whether the sellers were ready, willing, and able to perform at the time of the scheduled time-of-the-essence closing (see Rodrigues NBA, LLC v Allied XV, LLC, 164 AD3d at 1389-1390). Based on the foregoing, the Supreme Court properly denied those branches of the defendants' motion which were for summary judgment on the counterclaim to retain the down payment as liquidated damages and to recover attorney's fees, and for a hearing on the amount of attorney's fees to be awarded. The court also properly denied those branches of the defendants' motion which was for summary judgment dismissing the dismissing the causes of action for specific performance and to recover damages for breach of contract, and with respect to the cause of action for declaratory relief, as there are triable issues of fact as to whether the buyers failed to demonstrate a lawful excuse for their failure to close (cf. Martocci v Schneider, 119 AD3d at 749).
DUFFY, J.P., RIVERA, CHRISTOPHER and VOUTSINAS, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court